# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

SUBODHCHANDRA T. PATEL,

       Plaintiff,

  v.

JANET BREWTON,

       Defendant.

CIVIL ACTION NO.: 6:12-cv-105

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a 42 U.S.C. § 1983 action, as amended, contesting certain conditions of his confinement. (Docs. 31, 34.)  On February 17, 2015, Defendant Brewton ("Defendant") filed a Motion for Summary Judgment.  (Doc. 76.)  The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant filed a Motion for Summary Judgment and that a response must be filed by March 13, 2015.  (Doc. 78.)  That Notice further advised Plaintiff that:

> 1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

> 2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

> 3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.)  Plaintiff filed no Response to Defendant's Motion for Summary Judgment, and the Court received no indication this Notice or Defendant's Motion was returned as undeliverable.

However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

Based on the reasons which follow, Defendant's unopposed Motion should be **GRANTED**, Plaintiff's Complaint should be **DISMISSED**, and this case should be **CLOSED**. In addition, Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on appeal.

BACKGROUND[1]

Plaintiff asserts he arrived at Georgia State Prison on September 28, 2010, and he was allowed by Standard Operating Procedures to keep legal documents associated with the habeas corpus and civil rights actions he had pending at the time neatly in his locker without interference by prison officials. (Doc. 31, p. 11.) Plaintiff states Defendant classified Plaintiff's legal materials as "contraband" and told him to speak to his counselor about removing these materials. (Id. at p. 12.) Plaintiff also states Defendant warned him to throw away his legal materials or to send them outside of the prison. (Id.) Plaintiff maintains he wrote an informal grievance against Defendant on October 11, 2010, and alleged Defendant discriminated against him based on his religion, tortured him, and was selectively harassing him by confiscating his legal documents, which denied him access to the courts. (Id. at p. 13.) Plaintiff asserts, that Defendant, as retaliation for having filed grievances against her, "sternly warned" him to remove his legal documents from his locker to the prison library for storage. (Id. at p. 14.) Plaintiff

---

[1] The recited allegations are taken from Plaintiff's Complaint, as amended, and are viewed in the light most favorable to Plaintiff, the non-moving party.

alleges he spoke to the librarian, learned he would have to contact a counselor and tell him what documents he wanted, and could only make one trip to the library a week for document retrieval. (Id.) According to Plaintiff, these restrictions would "strangulate, substantially restrict and impede, obstruct and interfere with his access to legal documents so severely that he would NEVER been adequately and timely prepare his pleadings, briefs, motions, responses, replies, and other legal requirements in the Court in his current cases, and would constitute 'Government Impediment[.]" (Id. at pp. 14–15.) Plaintiff maintains Defendant's actions and mental torture resulted in grave physical injuries due to his severe hypertension and persistent hyperglycemia. (Id. at p. 15.)

Plaintiff states Defendant once again classified his legal documents as a fire hazard on December 2, 2010, and she "sternly ordered" him to remove his documents. (Id.) Plaintiff asserts he filed another informal grievance against Defendant. Plaintiff avers Defendant ordered Lieutenant Arthur to confiscate all of Plaintiff's legal materials and take them to her office, and she refused to provide Plaintiff with a receipt for each document. (Id. at p. 16.) According to Plaintiff, Defendant ordered the confiscation of his legal property as retaliation for filing a grievance against her. (Id.)

Plaintiff also maintains Defendant assigned Plaintiff to a "yard duty" detail, even though she knew his "disabling medical conditions" worsened after she confiscated his legal documents. (Id. at p. 19.) In addition, Plaintiff asserts he made sick call requests on three (3) dates because he suffered from severe nose bleeds while being exposed to the "bone-chilling cold" during yard duty, which exacerbated his hypertension. (Id.)

Plaintiff asserts that, on December 28, 2010, Officer Adkins delivered legal mail to him, and the package was opened outside of his presence. (Id. at p. 20.) Plaintiff states Officer

Adkins told him his legal documents were copied at Defendant's request. On this same date, Plaintiff asserts, Officer Harden brought an inmate property disposal agreement to him at Defendant's request and conveyed Defendant's threat to destroy Plaintiff's legal documents approximately a week later if Plaintiff failed to make arrangements to either mail out or have someone pick up these documents. (Id.)

Plaintiff contends he went to Defendant's office on December 30, 2010, and she claimed to have all of Plaintiff's legal materials in eight (8) boxes. Plaintiff asserts Defendant advised him he had to mail out or have someone pick up these documents within a week, or the documents would be destroyed. (Id. at p. 21.) Plaintiff asserts Defendant also advised him he could maintain a few documents, the remaining documents would be stored in the library, and he could access these documents through his counselor, Lieutenant Arthur, or Defendant. (Id.) However, Plaintiff maintains, Defendant ignored his concerns about being able to timely and adequately prepare necessary documents for his then-pending habeas corpus proceeding. (Id.) Plaintiff states he submitted an emergency sick call request on this same date because the "video-conference" with Defendant caused a life-threatening stroke or heart attack. (Id. at p. 22.) Plaintiff asserts he submitted three (3) more sick call requests over the course of the next three (3) days, and his medical needs were not addressed due to Defendant's "over-reach[.]" (Id.)

Plaintiff asserts Defendant also overreached by having Plaintiff's nutritional supplement stopped. (Id. at p. 23.) Plaintiff further asserts Defendant overreached by having him served food he was medically proscribed against eating due to his allergies and religious beliefs, such as eggs, red meat, white meat, and fish. (Id. at p. 28.) According to Plaintiff, Defendant's overreaching was a "biological weapon" used to cause "biological terror and torture[.]" (Id.)

Plaintiff contends his "ordinary firmness to file grievances against 'tremendous pressure' on him and 'threat' of destruction of his legal documents was CHILLED due to RETALIATION capabilities of Defendant[.]" (Id.) Plaintiff's Complaint, as amended, was served based on Plaintiff's contentions that Defendant retaliated against him by: restricting his access to the courts; being deliberately indifferent to his serious medical needs; and violating his right to free exercise of religion. (Docs. 44, 65.)

DISCUSSION

Defendant sets forth several grounds for summary judgment in her Motion. Defendant asserts Plaintiff cannot establish he was denied access to the courts or that she retaliated against him in any manner. (Doc. 76-2, pp. 5–11.) Defendant also asserts Plaintiff cannot establish she was deliberately indifferent to his serious medical needs and cannot sustain his First Amendment free exercise claim. Defendant avers Plaintiff also cannot premise claims against her based on respondeat superior principles, to the extent he raises such claims. Defendant states Plaintiff cannot pursue monetary damages claims against her in her official capacity, and that she is entitled to qualified immunity from suit in her individual capacity. Defendant contends Plaintiff's claims are barred under the Prison Litigation Reform Act because he has suffered no more than a *de minimis* physical injury. (Id. at pp. 20–21.) Finally, Defendant states Plaintiff is not entitled to his requested injunctive relief. (Id. at pp. 22–23.) In support of her Motion, Defendant submitted a Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, several declarations sworn under penalty of perjury, and a DVD of a conversation she had with Plaintiff on December 30, 2012.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to any of his claims, and Defendant's Motion is due to be granted as a result.

# I.  Standard of Review

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.     Official Capacity Claims

Defendant avers Plaintiff's claims against her in her official capacity are due to be dismissed.  (Doc. 76-2, p. 16.)  Specifically, Defendant maintains any monetary damages against her in her official capacity as a unit manager at Georgia State Prison would be a recovery against the State of Georgia, which has not consented to be subject to suit.  (Id. at p. 17.)

Plaintiff cannot sustain a Section 1983 claim against Defendant in her official capacity.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Id. at 71.  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendant is immune from suit under Section 1983.  Id.  Here, the State of Georgia would be the real party in interest in a suit against Defendant in her official capacity as an officer at a state penal institution, and, accordingly, the Eleventh Amendment immunizes this actor from suit.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (noting that the Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, unless the state either consents to be sued or waives its immunity from suit).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against this Defendant in her official capacity.  This portion of Defendant's Motion should be **GRANTED**.

### III.    Plaintiff's Claims Defendant Retaliated Against Him[2]

Here, Plaintiff alleges he filed informal grievances and lawsuits against Defendant and, as a result, Defendant interfered with his right to access the courts, his medical care and treatment, and his free exercise of religion.  These allegations require a discussion about retaliation, as well as the discrete constitutional violations Plaintiff maintains Defendant's alleged retaliatory actions caused.

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)).  "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech."  O'Bryant, 637 F.3d at 1212.  "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

---

[2]  As Plaintiff contends Defendant's actions against him were made as retaliation for the exercise of his First Amendment rights, it is appropriate to address the individual substantive grounds of Defendant's Motion for Summary Judgement under the larger umbrella of Plaintiff's retaliation claims.

For purposes of Defendant's Motion, the undersigned recognizes Plaintiff's claim he filed grievances and lawsuits against Defendant. The Court accepts Plaintiff's filings are constitutionally protected speech. However, Plaintiff must show a causal connection between the exercise of this protected speech and Defendant's alleged actions.

A. **Access to the Courts Claim**

Defendant notes Plaintiff's legal materials were removed from his cell on December 7, 2010. (Doc. 76-2, p. 6.) Defendant states Plaintiff cannot establish her actions caused any injury to his pursuit of a non-frivolous cause of action. Rather, Defendant asserts, the evidence before the Court reveals Plaintiff was given numerous opportunities to go through his legal materials and select the materials he needed to prepare his paperwork. (Id.) Defendant asserts Plaintiff was told the materials he did not need at the time would be stored in the prison library under lock and key, and he would be able to arrange for the retrieval of other materials he needed, yet he has failed to do so, even though his materials remain in the prison library. (Id. at pp. 5–6.) Defendant maintains Plaintiff's habeas corpus petition was dismissed, without prejudice, because it was filed prematurely, not as a result of anything she may have done. (Id. at p. 5.)

Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). In order to pass constitutional muster, the access allowed must be more than a mere formality. Bounds v. Smith, 430 U.S. 817, 822 (1977); Chappell, 340 F.3d at 1282. The access must be "adequate, effective, and meaningful." Bounds, 730 U.S. at 822. For an inmate to state a claim that he was denied access to the courts, he must establish that he suffered "actual injury" by showing that the defendant's actions hindered his

ability to pursue a nonfrivolous claim. Christopher, 536 U.S. at 415; Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003). The pursuit of claims which are protected are those in which a plaintiff is attacking his sentence, directly or collaterally, or challenging the conditions of his confinement. See Lewis v. Casey, 518 U.S. 343 (1996). Stated another way, the "only specific types of legal claims [which] are protected by this right [are] the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit." Hyland v. Parker, 163 F. App'x 793, 798 (11th Cir. 2006) (citing Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998)). "Actual injury" is an essential element to a claim asserting the denial of access to the courts. See Christopher, 536 U.S. at 415.

Defendant declared she was the unit manager over the area of the prison Plaintiff was housed in December 2010. Defendant also declared Plaintiff had "an extreme amount of legal property in his cell, which did not fit in is locker box." (Doc. 76-4, p. 3.) Defendant deemed the amount of Plaintiff's legal property to be contraband, as defined in Standard Operating Procedure ("SOP") IIB06-0001. This SOP provides: "Inmates shall be allowed to maintain legal materials so long as the quantity of such materials . . . does not create a fire, sanitation, security, or housekeeping problem." (Doc. 76-5, p. 5.) Contraband is defined under this SOP as "[p]roperty items" "which present a fire, sanitation, security[,] or housekeeping problem." (Id. at p. 3.) Defendant stated she had several conversations with Plaintiff about removing his excess papers and storing them in the prison library, and she allowed Plaintiff at least four (4) chances to go through his legal materials and pick out what he needed in order to work on his pending causes of action. (Doc. 76-4, p. 4.) Defendant stated Plaintiff refused to allow the storage of his legal materials in the library, so the materials were taken to the property room for storage. (Id.)

On December 30, 2012, Plaintiff met with Defendant, Officer Harden, and Lieutenant Arthur in Defendant's office. (Id.; Doc. 76-6.) During this meeting, which Lieutenant Arthur videotaped, Defendant informed Plaintiff no fewer than three (3) times he could have the legal materials he needed to work on the case he had pending, but he would have to store his other papers under lock and key in the prison library and could ask Defendant, Lieutenant Arthur, or his counselor for access to other legal materials he needed in the future. (Doc. 76-6, 3:18:50, 3:20:52; 3:22:19; Doc. 76-4, pp. 4–5.) Defendant informed Plaintiff that his excessive legal materials were considered contraband, and he was not in compliance with the SOP regarding inmates' property. (Id. at p. 4; Doc. 76-6, 3:20:15.) Plaintiff would not agree with this arrangement, as he told Defendant he had a habeas petition with 76 issues, and he had to make a citation to the record for every one of those issues. (Id. at 3:19:20.) As of the date Defendant signed her Declaration, Plaintiff's legal materials were still stored at the prison library, and Plaintiff had not asked Defendant to help him obtain any of his legal materials. (Doc. 76-4, p. 5.) Defendant avers she confiscated Plaintiff's property because it was contraband, not as a retaliatory measure. (Id.)

The uncontroverted evidence before the Court reveals no genuine disputes as to any fact material to Plaintiff's access to the courts claim. Rather, this evidence reveals Defendant's efforts to accommodate Plaintiff by allowing him to keep his legal materials at the prison but not create a fire or safety hazard, as required by the applicable SOP. In addition, Plaintiff fails to show that, even if Defendant had retaliated against him by hindering his access to the courts, he suffered any actual injury in his pursuit of any non-frivolous actions as a result of Defendant's actions.

The only causes of action Plaintiff identifies in his Amended Complaint are: an action filed in this Court, Patel v. Owens, et al., No. 6:11-cv-3, which he claims was dismissed without prejudice because he failed to exhaust his administrative remedies prior to filing that suit[3], (doc. 31, p. 10); a petition for mandamus in Cobb County Superior Court; a habeas petition in the Baldwin County Superior Court; and civil rights actions against Cobb County jailers.[4] (Id. at pp. 11–12.) The petition for mandamus to which the Court presumes Plaintiff refers was filed on February 17, 2006, and was dismissed without prejudice on May 12, 2011, under Georgia law because there was no written order in that case for five (5) years' time. Order, Patel v. Cobb Cty. Sheriff, et al., No. 06-1-1387, Dkt. Entry dated May 12, 2011 ("The above-styled case came before this Court pursuant to O.C.G.A. §§ 9-2-60(b) and 9-11-41(e), which mandate any action in which no written order is taken for a period of five (5) years automatically stands dismissed with costs to be taxed against the party plaintiff."). In addition, Plaintiff filed a state habeas corpus petition in the Tattnall County Superior Court in 2011, which was dismissed without prejudice on November 1, 2013, because the conviction Plaintiff wished to challenge was not yet

---

[3] Plaintiff moved to voluntarily dismiss this cause of action after the Magistrate Judge recommended dismissal of the Complaint because Plaintiff had filed three or more causes of action which were dismissed as frivolous, malicious, or failed to state a claim and had not shown he was in imminent danger of serious physical injury, as required by 28 U.S.C. § 1915(g). Report and Recommendation and Motion, Patel v. Owens, et al., Case No. 6:11-cv-3, ECF Nos. 36, 38. Plaintiff's motion was granted on April 25, 2011. Order, Id. ECF No. 40.)

[4] The Court was unable to locate any causes of action or appeals Plaintiff filed against Cobb County jailers either in the Cobb County Superior Court or in federal court which was pending on or around the time frame encompassing the events giving rise to Plaintiff's Complaint. The Court was also unable to locate a habeas corpus action initiated in the Baldwin County Superior Court. The Court notes Plaintiff's citation to a case in Baldwin County Superior Court, and that he filed a motion for continuance in that case (No. 05-cv-39937) on January 20, 2011, because the confiscation of his legal documents created an impediment to his filing pleadings. (Doc. No. 31, p. 25.) However, Plaintiff indicates this case was dismissed without prejudice in the Baldwin County Superior Court, and he had to refile his habeas corpus petition in the Tattnall County Superior Court. (Id. at p. 32.) As discussed in the body of this Report, Plaintiff's Tattnall County action was dismissed without prejudice because his state court conviction was not yet final. If Plaintiff's Tattnall County action was a refiling of his Baldwin County action, it stands to reason Plaintiff's Baldwin County petition was likewise dismissed because it was filed prematurely, not because of any impediment placed on Plaintiff's filing due to a retaliatory animus on Defendant's part.

final. (Doc. 76-7, pp. 2–3.) Again, Plaintiff fails to show that his lack of success in these cases, which the Court accepts as being "non-frivolous" within the meaning of applicable case law, was due to Defendant's actions. Defendant is entitled to summary judgment on this ground, and this portion of Defendant's Motion should be **GRANTED**.[5]

### B. Interference with Legal Mail Claim[6]

Defendant asserts Plaintiff made a conclusory allegation that he was told by an officer who delivered his legal mail that Defendant had ordered that his mail be opened and copied. (Doc. 76-2, p. 8.) In addition, Plaintiff alleged that a previously-filed case, Patel v. Owens, et al., No. 6:11-cv-3, was dismissed because he could not provide his prison trust account statements because his mail did not reach the Court based on the alleged retaliatory action of Defendant. (Id. at p. 9.)

Generally, inmates possess a First Amendment right to send and receive mail. Al–Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008) "[An inmate] has a First Amendment free speech right [to receive legal mail] separate and apart from his constitutional right of access to the courts. This right is, of course, subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators." Id. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with' with his legal mail."

---

[5] Plaintiff does not make any assertion that Defendant was aware of the filing of any grievances and lawsuits against her. However, given Defendant's focus on Plaintiff's inability to show causation between the alleged retaliatory action and the protected speech, the Court focuses on this element of Plaintiff's retaliation claims.

[6] Plaintiff's Complaint was not served on the separate basis of his claim that Defendant interfered with his legal mail. Defendant has moved for summary judgment on this basis, and the Court will address this ground as a subset of Plaintiff's retaliation claims.

<u>Ford v. Coleman</u>, No. 3:11-CV-1261-J-39JBT, 2015 WL 3404191, at *6 (M.D. Fla. May 26, 2015) (quoting <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003)).

In her declaration, Defendant asserted the prison mail room is "off limits to all inmates and unauthorized staff." (Doc. 76-4, p. 5.) Defendant also asserted she was not assigned to the mail room in 2010, and she did not have any involvement in Plaintiff's incoming or outgoing mail. (<u>Id.</u> at p. 6.) In addition, Defendant declared she did not order anyone to open and copy Plaintiff's mail, nor did she cause a delay to Plaintiff receiving or sending mail. (<u>Id.</u>)

Plaintiff offers nothing to counter Defendant's supported assertions that she was not assigned to the mail room and had no involvement in Plaintiff's incoming or outgoing mail. At best, Plaintiff offered testimony during his deposition that a mail room officer told him "all the incoming/outgoing documents are being copied at the instruction of Ms. Brewton." (Doc. 76-3, p. 19.) Even if this were true, Plaintiff has set forth no evidence that Defendant's alleged actions were retaliatory in nature. In addition, Plaintiff fails to show Defendant interfered with his legal mail on a regular basis. Instead, Plaintiff offers nothing more than bare conclusions in this regard, which is insufficient to defeat a motion for summary judgment. Moreover, Plaintiff's Complaint in <u>Patel v. Chatman, et al.</u>, No. 6:11-cv-95 (not <u>Patel v.</u> Owens, No. 6:11-cv-3, as cited by Defendant), was dismissed due to Plaintiff's failure to respond to the Court's order dated August 18, 2011, which warned Plaintiff of the dangers of not responding to the Court's directives. Orders, <u>Patel v. Chatman, et al.</u>, No. 6:11-cv-95, ECF Nos. 6, 9. In his motion for reconsideration of that Order, Plaintiff failed to mention he did not respond to the Court's directive because he had difficulties with his mail. Instead, he stated he had substantially complied with the Court's directives by sending forms which were different than those he was directed to submit. Motion, <u>Id.</u> ECF No. 11. The Honorable B. Avant Edenfield disagreed and

denied Plaintiff's motion. Order, Id. ECF No. 12. This portion of Defendant's Motion—to the extent Plaintiff stated a specified legal mail claim under the retaliation umbrella—should be **GRANTED**.

### C. Deliberate Indifference Claims

Defendant offers several arguments in opposition to Plaintiff's claim that she was deliberately indifferent to his medical needs. Defendant states Plaintiff only testified as to his belief that Defendant interfered with his sick call requests, but he did not actually know if that was the case. Defendant also notes Plaintiff's testimony that the renewal of his nutritional supplement was in the physician's assistant's discretion. (Doc. 76-2, p. 10.) Defendant avers she would not have access to Plaintiff's confidential medical information, and security personnel, including unit managers, cannot overrule medical decisions. (Id.) Defendant asserts that, to the extent Plaintiff suffered from nosebleeds for the week he was assigned to yard duty, he cannot establish those nosebleeds constituted a serious medical need. In addition, Defendant states Plaintiff cannot establish two to three (2–3) hours' itching after allegedly eating food to which he was allergic is a serious medical need. (Id. at p. 13.) Conversely, Defendant notes Plaintiff's alleged diabetes and high blood pressure are serious medical needs, but Plaintiff conceded these conditions are normal except when he's stressed. (Id.) Nevertheless, Defendant maintains, Plaintiff cannot show she knew of and disregarded Plaintiff's serious medical needs. (Id. at pp. 13–14.)

Plaintiff's allegations implicate the Eighth Amendment's proscription against cruel and unusual punishment. That proscription imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976),

forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting <u>Estelle</u>, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (quoting <u>Hill</u>, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." <u>Haney v. City of Cumming</u>, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." <u>Goebert</u>, 510 F.3d at 1327.

Plaintiff testified during his deposition he "personally did not know what transpired between [Defendant] and the people taking care of the sick call. But the reason the sick calls are not attended because she was—she has the authority over those people." (Doc. 76-3, p. 21.)

Plaintiff further testified that he did not know whether Defendant had said anything to people in medical, but he thought he was not treated in medical was because Defendant said something to medical personnel. (Id.) According to Plaintiff, Defendant, as a unit manager at the time, had authority over the people in the medical unit. (Id.) Plaintiff also testified a nurse told him that Defendant had ordered that medical personnel stop providing him with Glucerna and "diabetic food or something like that."[7] (Id. at p. 22.) Plaintiff also testified Defendant force fed him food to which he is allergic by directing the "stewardess" "not to give a tray without meat." (Id.) Plaintiff stated he is allergic to eggs, meat, chicken, and turkey, and that is written on the top of his medical chart. (Id.) Plaintiff testified these items were splashed onto his tray, and he would itch for two to three hours' time if he ate his food which had been splashed with these allergens. Plaintiff also testified he had yard duty in December, worked the morning hours to pick up trash, and he had a nosebleed every day because his blood pressure increased. (Id. at pp. 18–19.)

Conversely, Defendant declared, as unit manager, she could not and did not overrule medical decisions or direct the medical care and treatment Plaintiff received, nor could she override any medical decision, direction, or prescription regarding Plaintiff. (Doc. 76-4, p. 7.) Dr. Dean Broome, the Medical Director at Georgia State Prison, echoed Defendant's declaration and stated she could not overrule medical decisions, direct an inmate's care or treatment, or override any medical direction or prescription of an inmate. (Doc. 76-11, p. 3.) Dr. Broome stated the inmates' health information is confidential, and direct access to this information is prohibited unless an inmate signs a release. In addition, Dr. Broome stated a unit manager does not have routine access to an inmate's health information. (Id.) Likewise, the Food Services

---

[7] Plaintiff also testified his prescription for Glucerna was for six months at a time, which may or may not have been continued, depending on who the medical staff member was at the time his prescription was due for renewal. (Doc. 76-3, p. 21.)

Manager, James Anderson, declared a unit manager cannot direct food services personnel or food servers what to put on or what to omit from an inmate's food tray. (Doc. 76-12, p. 3.)

Plaintiff fails to set forth any facts which indicate Defendant had subjective knowledge of his alleged medical conditions and was deliberately indifferent to those conditions. Instead, Plaintiff offers nothing more than speculation and his thoughts about Defendant's actions regarding his medical care and treatment through his deposition testimony. As this is the only evidence presented which could possibly be in his favor, Plaintiff has failed to establish a genuine dispute as to any fact material to his claim that Defendant retaliated against him by showing deliberate indifference to his serious medical needs. Plaintiff failed to respond to Defendant's Motion, and the only allegations which can possibly be used in support of his position are conclusory in nature. See Owens v. Lighthouse Counseling Ctr., Inc., No. CIV. A 2:06CV999-ID, 2009 WL 1204359, at *1 (M.D. Ala. Apr. 30, 2009) ("[T]he non-movant must present 'affirmative evidence' of material factual conflicts to defeat a properly supported motion for summary judgment. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. However, evidence presented by the non-movant must be believed and all justifiable inferences must be drawn in favor of the non-movant. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (internal citations omitted). This portion of Defendant's Motion should be **GRANTED**.

### D. Free Exercise Claims

Defendant notes Plaintiff's assertion that he could not pray to God if he had meat on his tray. However, Defendant maintains the evidence before the Court reveals she had nothing to do

with the food on Plaintiff's tray. (Doc. 76-2, p. 15.) Defendant also asserts Plaintiff testified that the primary reason he did not eat certain foods was due to his allergies to these food, and his religious beliefs were the secondary reason. Further, Defendant maintains that Plaintiff testified he did not know whether Defendant knew about the foods he could not eat, but she could have asked someone. (Id.)

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To plead a valid free exercise claim, a plaintiff must assert the claimed governmental action "impermissibly burdened one of his 'sincerely held religious beliefs.'" GeorgiaCarry.Org., Inc. v. Georgia, 687 F.3d 1244, 1258 (11th Cir. 2012) (quoting Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 834 (1989)).

Defendant does not dispute that Plaintiff, who is a member of the Hindu religion, asserts a sincerely held belief that he is not to eat eggs, red meat, white meat, or fish. (Doc. 76-2, p. 14.) However, and as noted in the preceding section, Defendant, as a unit manager, had no control over what was placed on Plaintiff's (or any other inmate's) food tray. Accordingly, it cannot be said Defendant acted in a way which violated Plaintiff's religious beliefs. In other words, Plaintiff has failed to set forth any fact indicating a governmental action (i.e., Defendant allegedly having food placed on Plaintiff's tray which are prohibited by his religion) which

resulted in an impermissible burden on his sincerely held religious beliefs. Plaintiff fails to establish a genuine dispute as to any fact material to this distinct subcategory of his retaliation claim. This portion of Defendant's Motion should be **GRANTED**.

As these recommended rulings dispose of all of Plaintiff's claims, it is unnecessary to address the remaining portions of Defendant's Motion.

## IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis.*[8] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit

---

[8] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

either in law or fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v.</u> <u>United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**. I also **RECOMMEND** that Plaintiff's Complaint be **DISMISSED**, this case be **CLOSED**, and Plaintiff be **DENIED** leave to proceed *in forma pauperis* on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The

Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

      **SO REPORTED** and **RECOMMENDED**, this 22nd day of July, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA